IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW MEXICO

DENNIS GRIEGO,

      Plaintiff,

v.                                                                                      Civ. No. 14-647 SCY

CAROLYN W. COLVIN, Acting
Commissioner of the Social Security
Administration,

      Defendant.

**<u>ORDER GRANTING PLAINTIFF'S MOTION TO REVERSE OR REMAND</u>**

THIS MATTER is before the Court on Plaintiff Dennis Griego's Motion to Reverse and Remand the Social Security Commissioner's final decision denying Plaintiff disability insurance benefits. *Doc. 18*. For the reasons discussed below, the Court will grant Plaintiff's motion and remand this action to the Commissioner for further proceedings consistent with this opinion.

    **I.**    **Background**

Plaintiff Dennis Griego is a 55-year-old man with extensive work experience in the construction industry. AR 307, 468. In 2005, while at work, Mr. Griego suffered a crush injury to his right foot. AR 452, 469. Due to this injury, Mr. Griego underwent multiple surgeries, including a skin graft. AR 469. In 2006, he returned to work in the utilities construction field, where he remained employed until he was laid off in June 2008. AR 50, 76-77, 307. Mr. Griego alleges that he has been disabled since this time due to right foot pain, weakness, and difficulty walking/standing that are attributable to his right foot injury. AR 306.

In May 2009, Dr. Barrie Ross, a physician who treated Mr. Griego for chronic right foot/ankle pain, referred Mr. Griego to Dr. Chad Brady, his foot surgeon, for a follow-up

appointment. AR 385. Dr. Brady saw Mr. Griego on May 20, 2009. AR 392. He noted that Mr. Griego's heel had been "hurting him more over the last several months." *Id.* Dr. Brady examined Mr. Griego's foot and ordered x-rays. Based on this information, Dr. Brady concluded that there was a screw "backing out some" in Mr. Griego's foot. *Id.* Dr. Brady "discussed the severe nature of [Mr. Griego's] original injury" with him and recommended surgery to remove the screw. *Id.* On June 9, 2009, Dr. Brady performed the recommended hardware removal surgery on Mr. Griego's foot. AR 396.

When Mr. Griego returned to Dr. Brady after the surgery, he reported that he was continuing to experience pain in his right foot. He further explained that he could not walk without a cane to take the weight off his right foot. AR 418. Dr. Brady filled out a medical assessment of Mr. Griego's ability to do work-related physical activities. AR 452. In the section for walking or standing, Dr. Brady was asked whether Mr. Griego could stand and/or walk (in a normal workday, with normal breaks) for a total of: (1) less than two hours, (2) at least two hours, or (3) about six hours. Dr. Brady checked the box stating that Mr. Griego could stand and/or walk for less than two hours a day. He explained that Mr. Griego had a "severe deformity of right foot from crush injury/pain." *Id.*

On December 16, 2009, during a visit with Dr. Ross, Mr. Griego reported that the June 2009 surgery only resulted in minimal pain reduction of about 2%. AR 408. Similarly, on September 27, 2010, Mr. Griego returned to Dr. Brady for foot pain, explaining that his right foot hurt a lot and it was hard for him to walk. AR 455. Dr. Brady explained that there was nothing for him to do until Mr. Griego was "at the point that he is ready to amputate the foot" because of pain. *Id.*

## II.     Procedural History

On May 29, 2009, Mr. Griego filed an application for disability insurance benefits, alleging a disability start date of June 9, 2008. AR 302. After his claim was denied on initial review and upon reconsideration, his case was set for a hearing in front of Administrative Law Judge ("ALJ") Ann Farris. On February 22, 2011, the ALJ issued a written decision finding that Mr. Griego was not disabled from June 9, 2008 to January 20, 2010, but was disabled beginning January 21, 2010. AR 102-112. Mr. Griego appealed this decision to the Social Security Appeals Council. The Appeals Council remanded for the ALJ to reconsider her decision that Mr. Griego was not disabled between June 9, 2008 and January 20, 2010. AR 118-121.

On April 10, 2013, the ALJ issued a written decision reaffirming that Mr. Griego was not disabled prior to January 21, 2010. AR 23-34. As part of making this determination, the ALJ found that Mr. Griego suffered from the following severe impairment: "right foot deformity with post traumatic osteoarthritis, status post hardware removal." AR 25. The ALJ concluded that this impairment did not meet or medically equal the severity of a listed impairment, so as to be automatically acknowledged as a disability. AR 26. Furthermore, after considering the intensity, persistence, and limiting effects of this condition, the ALJ decided that Mr. Griego was capable of performing sedentary work as long as he was not required to walk on uneven ground. *Id.* As a result, the ALJ found that Mr. Griego was not entitled to disability benefits for the period prior to January 20, 2010. AR 34.

## III.    Applicable Law

### A. Disability Determination Process

A claimant is considered disabled for purposes of Social Security disability insurance benefits if that individual is unable "to engage in any substantial gainful activity by reason of any

medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). The Social Security Commissioner has adopted a five-step sequential analysis to determine whether a person satisfies these statutory criteria. *See* 20 C.F.R. § 404.1520. The steps of the analysis are as follows:

(1) Claimant must establish that she is not currently engaged in "substantial gainful activity." If claimant is so engaged, she is not disabled and the analysis stops.

(2) Claimant must establish that she has "a severe medically determinable physical or mental impairment . . . or combination of impairments" that has lasted for at least one year. If claimant is not so impaired, she is not disabled and the analysis stops.

(3) If claimant can establish that her impairment(s) are equivalent to a listed impairment that has already been determined to preclude substantial gainful activity, claimant is presumed disabled and the analysis stops.

(4) If, however, claimant's impairment(s) are not equivalent to a listed impairment, claimant must establish that the impairment(s) prevent her from doing her "past relevant work." Answering this question involves three phases. *Winfrey v. Chater*, 92 F.3d 1017, 1023 (10th Cir. 1996). First, the ALJ considers all of the relevant medical and other evidence and determines what is "the most [claimant] can still do despite [her physical and mental] limitations." 20 C.F.R. § 404.1545(a)(1). This is called the claimant's residual functional capacity ("RFC"). *Id.* § 404.1545(a)(3). Second, the ALJ determines the physical and mental demands of claimant's past work. Third, the ALJ determines whether, given claimant's RFC, claimant is capable of meeting those demands. A claimant who is capable of returning to past relevant work is not disabled and the analysis stops.

(5) At this point, the burden shifts to the Commissioner to show that claimant is able to "make an adjustment to other work." If the Commissioner is unable to make that showing, claimant is deemed disabled. If, however, the Commissioner is able to make the required showing, the claimant is deemed not disabled.

*See* 20 C.F.R. § 1520(a)(4); *Fischer-Ross v. Barnhart*, 431 F.3d 729, 731 (10th Cir. 2005).

### B. Standard of Review

A court must affirm the denial of social security benefits unless (1) the decision is not supported by "substantial evidence" or (2) the ALJ did not apply the proper legal standards in

reaching the decision. 42 U.S.C. § 405(g); *Casias v. Sec'y of Health & Human Serv.*, 933 F.2d 799, 800-01 (10th Cir. 1991). In making these determinations, the reviewing court "neither reweigh[s] the evidence nor substitute[s] [its] judgment for that of the agency.'" *Bowman v. Astrue*, 511 F.3d 1270, 1272 (10th Cir. 2008). For example, a court's disagreement with a decision is immaterial to the substantial evidence analysis. A decision is supported by substantial evidence as long as it is supported by "relevant evidence . . . a reasonable mind might accept as adequate to support [the] conclusion." *Casias*, 933 F.3d at 800. While this requires more than a mere scintilla of evidence, *Casias*, 933 F.3d at 800, "[t]he possibility of drawing two inconsistent conclusions from the evidence does not prevent [the] findings from being supported by substantial evidence." *Lax v. Astrue*, 489 F.3d 1080, 1084 (10th Cir. 2007) (citing *Zoltanski v. F.A.A.*, 372 F.3d 1195, 1200 (10th Cir. 2004)).

Similarly, even if a court agrees with a decision to deny benefits, if the ALJ's reasons for the decision are improper or are not articulated with sufficient particularity to allow for judicial review, the court cannot affirm the decision as legally correct. *Clifton v. Chater*, 79 F.3d 1007, 1009 (10th Cir. 1996). As a baseline, the ALJ must support his or her findings with specific weighing of the evidence and "the record must demonstrate that the ALJ considered all of the evidence." *Id.* at 1009-10. This does not mean that an ALJ must discuss every piece of evidence in the record. But, it does require that the ALJ identify the evidence supporting the decision and discuss any probative and contradictory evidence that the ALJ is rejecting. *Id.* at 1010.

**IV.     Analysis**

Mr. Griego challenges the ALJ's decision on four grounds: (1) failure to assess whether Mr. Griego's foot condition met or equaled Listing 1.02, (2) failure to conduct a function-by-function analysis of Mr. Griego's physical capabilities, (3) failure to adequately incorporate Dr.

5

Brady's finding into the RFC, and (4) failure to discuss the medical opinion of examining consultant, Dr. John Vigil. *Doc. 18* at 2. With regard to Plaintiff's first argument, the Court concludes that the ALJ failed to properly assess whether Plaintiff's foot condition met or equaled Listing 1.02. The Court further concludes that this error was not harmless. Because remand is necessary, the Court will not issue a decision with respect to Plaintiff's remaining arguments.

### A. The ALJ's Analysis was Deficient

At step three of the five-step sequential analysis, an ALJ must determine "whether the claimant's impairment is equivalent to one of a number of listed impairments that the Secretary acknowledges as so severe as to preclude substantial gainful activity." *Clifton*, 79 F.3d at 1009. In so doing, the ALJ must discuss the relevant evidence and explain her findings; it is not sufficient for an ALJ to simply state in summary form that a claimant's impairments do not meet or equal the Listed Impairments. *Id.* Here, the ALJ erred in failing to conduct this analysis. The portion of her opinion regarding step three simply states:

> There is no showing that Mr. Griego's right foot deformity with post traumatic osteoarthritis met or equaled a listed impairment during the relevant period. Specifically, I have considered Listing 1.02 in making this determination.

AR 26. Defendant acknowledges that this finding is "conclusory" and effectively concedes that the ALJ erred at step three by failing to explain her reasons for finding that Mr. Griego's foot/ankle condition did not meet or medically equal Listing 1.02. *Doc. 24* at 7-8. To the extent it is in dispute, however, the Court concludes that the ALJ's failure to explain her reasoning at step three constitutes error.

### B. The Error was not Harmless

Because the Court concludes that the ALJ's analysis was error, the next question is whether the error is harmless. In answering this question, the Court is mindful of the Tenth

Circuit's admonition that, "we apply harmless error analysis cautiously in the administrative review setting." *Fischer-Ross v. Barnhart*, 431 F.3d 729, 733 (10th Cir. 2005).  Defendant argues that the ALJ's error is harmless under the Tenth Circuit's holding in *Fischer-Ross*, 431 F.3d at 734.  In *Fischer-Ross*, as in *Clifton*, the ALJ summarily found that none of the Listed Impairments were met at step three. The Tenth Circuit considered whether this error "require[d] reversal [even though] the ALJ's factually substantiated findings at steps four and five of the evaluation process alleviate[d] any concern that [the] claimant might have been adjudged disabled at step three." *Id.* at 730. The Tenth Circuit concluded that *Clifton* does not require remand under such circumstances. Rather, a *Clifton* error is harmless if "confirmed or unchallenged findings made elsewhere in the ALJ's decision confirm the step three determination under review" and "[n]o reasonable factfinder could conclude otherwise." *Id.* at 734-35.

Thus, the Court must decide whether this case is similar to *Fischer-Ross,* where at steps four and five "an ALJ provides detailed findings, thoroughly reviewed and upheld by the district court", *id.* at 734, or like *Clifton* where the only finding was an RFC for a "limited range of sedentary work" which amounted to a "bare conclusion . . . that precluded meaningful review." *Id*.  The Court concludes that this case is much more like *Clifton* than *Fischer-Ross*.  Like *Clifton*, the ALJ found Plaintiff to have the residual functional capacity to perform sedentary work.  AR 26.  The Tenth Circuit in *Fischer-Ross* noted that a "sedentary RFC already represents a significantly restricted range of work and, thus, a finding of disabled usually applies when the full range of sedentary work is significantly eroded." *Fischer-Ross,* 431 F.3d at 734 (internal citations and quotations omitted).  In light of the sedentary RFC, for the ALJ's error at step three

to be considered harmless it seems that the ALJ would have to engage in a particularly rigorous analysis at steps four and five.  This, the ALJ did not do.

As Plaintiff pointed out in connection with the fourth argument in support of her motion to reverse and remand, the ALJ failed to discuss the medical opinion of examining consultant Dr. John Vigil as it related to Plaintiff's foot.  Even Defendant had no choice but to acknowledge that "the ALJ could have been clearer in stating that he [sic] had considered Dr. Vigil's opinion about Plaintiff's restrictions."  *Doc. 24* at 14.  While the ALJ did provide a comprehensive review of the examination report from Dr. Vigil, she never addressed Dr. Vigil's "opinion that Mr. Griego was significantly disabled secondary to his chronic right lower extremity pain and atrophy" and how this bears on his further opinion that Plaintiff "was precluded from performing even sedentary work on a full-time basis." AR 29.  To the contrary, the ALJ only considered Dr. Vigil's opinion related to depression and anxiety and incorrectly represented that, "there is nothing in the record to indicate [Mr. Griego] was incapable of performing sedentary work at all times relevant to this decision."  AR 31.[1]

Nonetheless, Defendant argues that the ALJ's RFC establishes that Mr. Griego cannot meet Listing 1.02 (which requires an inability to ambulate effectively) because the ALJ's RFC indicates that Mr. Griego can ambulate effectively.  The ALJ's RFC findings read as follows: "[C]laimant has the [RFC] to perform sedentary work as defined in 20 CFR 404.1567(a) and 416.967(a) except he is unable to walk on uneven round [sic] and he should avoid extremes of cold." AR 26. This barebones RFC does not definitively resolve whether Mr. Griego could or could not ambulate effectively.  Effective ambulation is defined as the ability to sustain "a reasonable walking pace over a sufficient distance to be able to carry out activities of daily

---

[1] On remand, the ALJ should address Dr. Vigil's opinion regarding Plaintiff's foot and his conclusion that Mr. Griego was incapable of performing sedentary work.  Not doing so in her decision constituted error.  Because the Court is remanding this case, it need not address whether this error was harmless.

living." 20 C.F.R. Part 404, Subpt. P, App. 1 § 1.00(2)(b)(2). "[E]xamples of ineffective ambulation include . . . the inability to walk without the use of a walker, two crutches or two canes, [and] the inability to walk a block at a reasonable pace on rough or uneven surfaces. . ." *Id.*

Under Tenth Circuit precedent, an isolated and insubstantial RFC for "a limited range of sedentary work . . . does not suggest an explicit, definitive basis for rejection of the listings." *Fischer-Ross*, 431 F.3d at 734; *see also, Murdock v. Astrue*, 458 F. App'x 702, 705 (10th Cir. 2012) (concluding that the RFC did not conclusively preclude the claimant's qualification for disability benefits under Listing 1.02 where the ALJ found that claimant could perform sedentary work, but needed a walker to ambulate long distances). While sedentary work requires occasional walking and standing (no more than two hours per workday), SSR 96-9p, 1996 SSR LEXIS 6, 1996 WL 374185, at *6 (S.S.A. July 2, 1996), numerous courts have confirmed that an ability to perform sedentary work does not automatically establish the ability to ambulate effectively. *See Murdock*, 458 F. App'x at 705; *Ogle v. Colvin*, No. 13-1096, 2014 U.S. Dist. LEXIS 18285, at *6-7, 11-13 (D. Kan. Feb. 13, 2014) (findings that plaintiff could perform sedentary work were "insufficient to alleviate 'any concern' that plaintiff might not be able to ambulate effectively").

In fact, Defendant never explicitly argues that the RFC finding regarding Mr. Griego's ability to perform sedentary work is sufficient to replace the missing step three analysis. Rather, Defendant contends that "Plaintiff's own statements demonstrate that he can walk effectively." *Doc. 24* at 9. Defendant highlights Mr. Griego's reports, summarized by the ALJ, that he can prepare meals, do household chores (including yard work), walk his dog, and go shopping. *Id.*; AR 30 "[Mr. Griego] said he had no problems bathing, dressing, driving, cooking, grocery

shopping, taking out the trash, doing laundry, maintaining his yard, including cutting weeds and general clean-up, attending church once in a while, . . . caring for his dogs, and following a program on television."). The Court acknowledges that (1) this testimony *may* support a finding that Mr. Griego had the ability to walk a reasonable pace over normal distances so as to perform normal activities and (2) such a finding would conclusively establish that Mr. Griego did not meet the requirements for Listing 1.02. The problem, however, is that the ALJ merely repeated what Mr. Griego said without analysis. The *analysis* that should have been in the ALJ's decision is instead only found in Defendant's brief. In *Fischer-Ross*, the Tenth Circuit indicates that an ALJ can save a deficient analysis at step three with a comprehensive analysis at steps four and five. *Fischer-Ross*, 431 F.3d at 735 ("[T]he ALJ's confirmed findings at steps four and five of his analysis, coupled with indisputable aspects of the medical record, conclusively preclude Claimant's qualification under the listings at step three."). But unlike Defendant's brief, the ALJ's decision is long on recitation of the record while short on analysis of that record.

It is not within this Court's power to supply such analysis where the ALJ's RFC does not itself conclusively establish that Mr. Griego could ambulate effectively. *See Murdock*, 458 F. App'x at 704 ("If . . . there are no findings that 'conclusively negate the possibility' that a claimant can meet a relevant listing, [the court] must remand to the ALJ for further findings.") (internal citation omitted). Defendant's argument about the incompatibility of Mr. Griego's statements and Listing 1.02 invites the Court to act outside the scope of its review by weighing the evidence and resting its harmless error determination "on legal or evidentiary matters not considered by the ALJ." *Allen v. Barnhart*, 357 F.3d 1140, 1145 (10th Cir. 2004).

A court may forgive a step three error if the ALJ's other confirmed findings make clear that the error is harmless, *Fischer-Ross*, 431 F.3d at 734, but a court may not rescue a step three

10

error by conducting a post-hoc review of the evidence to supply necessary findings that are missing, *Allen*, 357 F.3d at 1145, *see also Dye v. Barnhart,* 180 F. App'x 27, 30-31 (10th Cir. 2006). Doing so would "overstep our institutional role and usurp essential functions committed in the first instance to the administrative process." *Allen*, 357 F.3d at 1142.  Here, the only direct findings the ALJ made about Mr. Griego's ability to walk was her conclusion that he was unable to walk on uneven ground, AR 26, and her implicit adoption of Dr. Brady's August 2009 assessment that Mr. Griego could "stand and walk with normal breaks for a total of less than two hours in an eight-hour workday[.]" AR 32. Neither finding precludes a reasonable fact-finder from reasoning that Mr. Griego could not walk effectively. First, as Mr. Griego emphasizes, the regulations list the inability to walk on uneven surfaces as an example of ineffective ambulation. 20 C.F.R. Part 404, Subpt. P, App. 1 § 1.00(2)(b)(2). Second, Dr. Brady's August assessment is open to interpretation. He never states how far Mr. Griego could walk at a time, whether he needed assistance to walk, or how much he could walk under the two hour mark—all information that could affect a determination about Mr. Griego's walking ability. In fact, Dr. Brady's assessment arguably supports Mr. Griego's claim that he could not walk effectively.  For instance, Dr. Brady explained that Mr. Griego had a severe foot injury and foot pain and selected the box placing the greatest limitation on Mr. Griego's ability to walk. AR 452.

Although Defendant effectively establishes that an ALJ *might* find that Mr. Griego did not have a disability that meets a listing, evidence exists in the opposite direction that makes this conclusion uncertain.  The undisputed evidence establishes that Mr. Griego suffered from a significant foot injury that affected his ability to walk. AR 452, 469. He consistently reported to his doctors that he was experiencing high levels of foot pain and needed a cane to keep weight off of his right foot. AR 385-387, 392-394, 408, 413-418, 452, 455-465, 469. While he testified

that he could perform certain routine chores, "[t]he ability to walk independently about one's home without the use of assistive devices does not, in and of itself, constitute effective ambulation." 20 C.F.R. Part 404, Subpt. P, App. 1 § 1.00(2)(b)(2). It is the ALJ's responsibility to weigh all of this evidence, as well as the evidence suggesting that Mr. Griego might be able to walk, and reach a reasoned conclusion about his ambulatory abilities. The Court will remand to allow the ALJ to conduct this analysis.

    IT IS THEREFORE ORDERED that Dennis Griego's Motion to Reverse and Remand (*Doc. 18*) is GRANTED. The Social Security Commissioner's denial of Mr. Griego's claim for disability benefits is reversed and the case is remanded for further proceedings that are consistent with this opinion.

_____
STEVEN C. YARBROUGH
UNITED STATES MAGISTRATE JUDGE